We are now recording. You want me to call the case first, Your Honor? Please. Yes, ma'am. Okay. Hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Susan F. Hutchinson presiding. Your Honor, the second case on the docket this morning is 2-22-0312 the People of the State of Illinois Plaintiff Appellee v. Rebecca Salamie, Defendant Appellant. Arguing on behalf of the Appellant, Ms. Elena B. Panik. Arguing on behalf of the Appellee, Ms. Pamela S. Wells. All right. Good morning, all. We do have an interpreter with us this morning to help Ms. Salamie, and that is Ms. Kitty Aubrey. At this time, I will swear in Ms. Aubrey so that she can participate fully with us. All right. Ms. Aubrey, do you swear, you have to do that, do you swear that you will make a true and impartial interpretation using your best skills and judgment in accordance with the standards prescribed by law and the Illinois Interpreter Code of Ethics, and that you will repeat all statements, if any, made during this oral argument from English to sign language fully and accurately? Yes, I do, Your Honor. Thank you. All right. Then with that, oh, there you are, Ms. Panik. It keeps moving on the screen. Oh, I just unmuted, so. It wasn't that. It's just the way the screen sets up. All right. Ms. Panik, if you are ready, you may proceed. Thank you, Your Honor. Good morning. May it please the court, counsel. My name is Elena Panik, appearing on behalf of defendant appellant Rebecca Salamie. I'd like to focus on the first issue in our brief today as to whether the trial court's failure to provide Rule 402 admonishments before implementing a should be vacated. The terms of Salamie's original plea were such that the class 4 felony to which she pled could be worked down to a misdemeanor if she successfully completed mental health court. Now, this arrangement had three distinct advantages. Number one, it gave her the opportunity to obtain mental health treatment, which she indicated on the record she wanted and needed. And number two, it gave her the opportunity to avoid a felony conviction. And finally, it gave her a chance to avoid prison, potentially. So two out of three of those benefits were lost in the renegotiation that followed. And that's fine in theory. It was the state's right to offer new terms, and it was Salamie's right to accept those new terms. But it's only fine if the plea modification was accompanied by the safeguards of due process. Negotiated pleas under Illinois law are a package deal, right? So the plea and the sentence go hand in hand like a contract, which is why a defendant who enters a negotiated plea is not allowed to file a motion to reconsider sentence. You know, if there's a defect in the sentence, then that to which the defendant agreed, he or she has to attack the plea itself. And when you look at all that 402 requires before a judge can accept a plea, it makes sense that you can't just change the terms, you know, willy nilly. If you want to change the terms, the defendant has to either move to withdraw their plea, or the parties have to agree to enter a new one or a modified one, which is what happened here. The parties renegotiated and in effect entered a new plea. So I want to be clear. Did they did the state reinstate all of the charges when they went through this plea in April? No, they did not. The only charge that was pending then was the felony domestic battery. Correct. All right. And I don't believe in particular that Ms. Salome is questioning her sentence of conditional discharge, is she? That's correct. But again, what the original deal had going for it was a chance to both obtain mental health treatment and avoid a felony conviction. And the new deal didn't have those things, which, you know, again, is her right to agree to new terms. But she needs to do that with her eyes open. And the problem here is that the record didn't make an affirmative showing that, that, you know, she knew what her rights and options were at that time, and what the consequences were, or that she was even agreeing for that matter to what these new terms were. So, you know, the state had argued that what happened on April 1 was, was a sentencing, and it was a sentence reduction in effect, you know, because they recognize that the guilty pleas have to comport with due process and Rule 402. And clearly, that didn't happen here. So let, you know, let's try to call it something else. But it's really a disingenuous argument, in the sense that she was never sentenced to two years in IDOC. Her plea was not, it wasn't finished yet. You know, Hayes says that DeKalb County Mental Health Court is a post plea pre-sentence disposition, where it sort of prolongs the whole process of it, we don't know yet what sentence she's going to get, it depends on how things turn out. So you can't say that this is just a sentencing reduction, it's actually changing the terms of her original plea. So again, yeah, the sentence to DOC, it's like a contingent clause in the contract. And if she had been unsuccessfully discharged from Mental Health Court, you know, that clause would have kicked in, but that that didn't happen. And it's Ms. Penick at any time during the period of time between the initial plea and April 1, when she was discharged neutrally, I believe from the Mental Health Court, did she receive any outpatient mental health counseling on behalf or from the state and the Mental Health Court? My understanding from the record is no, as far as like there was a, there was, I think a caseworker who she had some contact with, and the court had remarked, you know, in these various status proceedings that, you know, there's emergency proceedings, not proceedings, but there's meaningful participation in the program. It sounds like there was none. I mean, the coordinator was saying they were trying to get her into a residential program. That wasn't working out. There were significant delays. So as a result, they were trying to, as an in-between step, get her into a partial hospitalization program. And as I understand it, that didn't work out either. So if there was maybe some context, but there wasn't any formal treatment or therapy really happening at that time. And in fact, that was one of her grievances when, you know, she was growing frustrated with the delays, like she's not able to go into group or therapy. And it was, you know, that wasn't what she bargained for. So it was getting frustrating. So on that point, the case had been pending, by my count, 22 months before the initial plea agreement was entered. What was going on in the interim in terms of replacement that was sought? Is there anything on the record about that? Are you saying what was going on before they struck the original deal as far as like, they anticipate her needs or? Right. It doesn't, to me, it does not seem unforeseeable that a placement would not be available. So what was going on for the almost two years before that? Yeah, well, I would agree with you about that. I'm not sure the record is very clear on that point as to how, what efforts were made to anticipate these kinds of problems. All right. So on rule 402, the language in the rule says before accepting a guilty plea. Yeah. Didn't she plead guilty on October 6th? And didn't she not plead guilty on April 1? Well, she did plead guilty in the first proceeding. So if, you know, and we tried to explain this in brief, rule 402, it's really not tailored to this situation. This is a little bit of a weird situation, but I think the state's position that because this doesn't fit the mold for an original plea, that then no protections are required is really untenable. So, you know, yes, viewed strictly in light of rule 402, this case presents a question of first impression as to whether that the plea terms are negotiated. But, you know, rule 402 has always been a floor, not a ceiling on the procedures needed to ensure that guilty pleas comport with due process. And it's not difficult to envision in the spirit of that rule, what kinds of admonishments would have been useful and proper in this situation. You know, rule 402A talks about what rights the in that moment and what they're in fact waiving in that moment. And that becomes a critical point in the post-plea motion. She didn't know what right she had in that moment. She didn't know what she was giving up. Rule 402B talks about setting forth the terms of the plea agreement itself and ensuring whether the acceptance of it is voluntary and not, you know, made on some threats or promises. There again, totally appropriate to implement in this situation. What were the terms? Okay. So it's still going to be a class four. You're not going to get mental health treatment. It's going to be a felony. Sorry, but, you know, you no longer have the chance to work that down. And do you agree to that? Didn't she get, I mean, she received a benefit from this modification or new plea, however you characterize it, because she avoided the prison that was coming if she hadn't complied with the mental health. And she got the conditional discharge instead. So are you asking that we issue an opinion extending rule 402 to a plea, to a post plea modification of sentence? Well, I don't think it's a post plea modification of sentence because again, it was a negotiated plea and the terms of the original plea are not being carried out here. So you can't move to reconsider a sentence when there's a negotiated plea. That's not allowed. So you really can't just change the sentence without changing the terms. I think there was a second part of your question, perhaps I missed. Go ahead, Justice Hutchinson. Well, I just wanted to ask, I think Judge Montgomery was responsible for both mental health court and this particular criminal call. Is that correct? Well, they changed his courtroom when they were going to enter mental health court. That's my understanding. I don't know that he knew what was going on in this case. Did he actually enter an order indicating the withdrawal of the earlier October plea? No. I mean, there is an order for conditional discharge. So it just sort of like, I guess, supersedes what originally happened. But it doesn't say specifically, which in this strange case might have been helpful if he said, I am considering the plea to the class four felony withdrawn. He did not say anything like that, correct? He did not, no. The record is very sparse as to how that new deal was implemented. It was pretty much, you know, I'm sorry, we can't provide treatment for you. It's sad, but true. But here's this new deal and now you have conditional discharge and thank you, you know, but thank you. But she didn't know what her rights were and they didn't spell out what, you know, the state argues that she can, well, she could have waited, right? She could have waited and waited. Maybe eventually this treatment would become available. But even that wasn't spelled out. Like you understand you have the right to keep waiting. Do you want to do that? Or do you want to change the terms? Here are your rights in this moment. And what you see in the motion to withdraw the plea is the court and council having never dealt with this situation before, they didn't know what her rights were in that moment. They're like, well, we can't really tell you because this has never happened, but that's really not fair to put that burden on her, like quick, make a decision. Even though we're not going to tell you what's behind door number two, if you don't take this opportunity. And that takes us to the other issue, the ineffective assistance in the conflict that council harbored. Are you correct? Sure. I mean, you know, it's our position that her plea really should be withdrawn in this situation. But if your honors do not go that direction, yes, you know, she did challenge the voluntariness of her plea through counsel in a motion to withdraw the plea. It's our position that any off the record basis, though, for challenging the voluntariness of her agreement is really not fully fleshed out in this case on account of defense counsel having an actual conflict of interest in advancing that claim. So, you know, counsel didn't even raise his own misinformation. We're not saying exactly where it came from sometimes, you know, but there's not even an affidavit or testimony from Ms. Salome about what she knew and understood in those moments. We only have an affidavit from counsel himself, which again, making himself a witness to what transpired is makes pretty plain that there's a conflict at issue. So the alternative, you know, a remand for new post plea proceedings is certainly warranted. The state argues that even if that issue was to be considered, the defendant could never show prejudice. How do you respond to that? Prejudice on the conflict issue? I mean, I don't know how prejudice could be lacking in this situation. We have a transcript of the agreement itself that shows that nobody made clear what was happening. And we have at least an affidavit from defense counsel saying she was misinformed and thought that, you know, if she didn't take this deal that, you know, it might automatically convert to a blind plea. So I'm not sure how that could not be prejudicial. Counsel, what was the nature of the bad advice or the incorrect information that was allegedly given by counsel on the April one negotiation? What was incorrect about the information given by counsel? Well, the allegation is that she was told that if she didn't take this new deal, you know, the class four with the conditional discharge and no more opportunity for mental health treatment, that, you know, it could, her original plea could automatically convert to a blind plea on the class four felony. And there's really no authority for that happening. I mean, that's just incorrect. And no one has disputed seemingly in the post plea proceedings that that was incorrect advice. So off the record, it looks like she had bad information. On the record, we've got nothing, right, about what her rights were, what she's giving up. So there's no affirmative showing, you know, that due process was complied with here. And rule 402 requires more than that. So we would ask, first and foremost, that you vacate her plea in this case. Thank you. All right. Thank you, Ms. Penick. You will have an opportunity to reply if you choose after Ms. Wells has completed her argument. Thank you. All right. Ms. Wells, you may proceed. Good morning, Your Honors. Counsel, may it please the court. Counsel had indicated or defendant indicated during their oral argument that rule 402 is not tailored for this situation. And that is the people's whole point. 402, rule 402 is very specific in statutory interpretation applies to the interpretation of Supreme Court rules. Rule 402 applies to guilty pleas and where there is a plea that would be sufficient to establish guilt where you stipulate to evidence. Sorry about that. And that's not what happened here in April. In October, that is what happened. She was fully admonished. And so 402 applied in October, that occurred. In April, we have a very horrible situation, which is the client was not able to get the mental health treatment. There was a long wait list. And she was left with three options if she couldn't get the benefit of the the mental health court in DeKalb is a post-plea pre-sentence program. So she was provided a caseworker, she participated in the mental health court regular statuses, but she did not get into the residential treatment that was recommended at the time of the original plea. It wasn't guaranteed. I think as Justice Kennedy indicated through his question, this was something that could probably have been foreseen that that kind of treatment may have entailed a wait list. So since 402 is not tailored for this situation, there is no error and we're under a plain error analysis because this was not preserved. There is no error because 402 does not specifically apply. All right, Ms. Wells, may I ask a question? Was there ever an order entered or did Judge Felony was being vacated? No, and the defendant did not file a motion to vacate her guilty plea. In her post-plea motion, she acknowledges that that was part of the advice she was provided. She could have moved to withdraw her plea. She could have renegotiated. Those were things that included in her post-plea motion and she knew that specific performance could be requested because in her post-plea motion, she acknowledges that that was impracticable in this case because of the long wait list. So she didn't want to stay on the wait list. She did not move to withdraw her guilty plea and the thing that was left was a renegotiated deal, which is what all counsel agreed to. After, which is referred to in the reply brief, is very specific that you can't unilaterally change without withdrawing your guilty plea. This was not a unilateral change. This was an agreement between the parties that we don't have the treatment available. Let's look at the three options under Whitfield and they went with number three, which was an plain error. The trial court was supposed to give rule 402 admonishments, which are not tailored for this situation and under the analysis of how a Supreme Court rule should be interpreted, the trial court just did not err in not giving 402 admonishments. That is the only argument made, not that the trial court should have given some different admonishments, but should have complied with rule 402 admonishments. That does not apply here under the plain language of 402 and so the trial court just couldn't err and when looking at plain error, which is a narrow analysis, it doesn't apply to argument one. 402 does not apply. I'm asked for the ineffective assistance of counsel and I want to address that briefly unless any of the justices have a question on issue one before I move on. Okay. With regard to 402, the spirit of the rule is that the defendant should understand what the sentence is in exchange for the plea. Correct? It should all be done up all at the same time. The spirit of the rule is absolutely that is correct, but when you look at Whitfield, when the defendant doesn't get the benefit of the bargain, then it is up to the trial court how to resolve that issue. She had the choice to and acknowledges she could have, but did not file a motion to withdraw her guilty plea, so all of the charges weren't reinstated. She just remained with the one felony domestic battery and they renegotiated the sentence because at that point she had already pled, we had the three options of withdraw your guilty plea, specific performance, or renegotiate. The court under 402, I absolutely agree with the spirit of the rule, which is at the time of the plea, but given the specific performance issue under the unusual facts of this case, 402 just doesn't apply. All right. So counsel, as to the conflict issue, isn't the attorney in the position of arguing his own effectiveness? Well, and that can be a situation where that is a conflict of interest, but you still have to show prejudice. And that is where we argue that you haven't, looking at the Vatimutic and analogizing it, we still say this is not a plea in April, but looking at Vatimutic, the defendant has to was affected by counsel's erroneous advice. And given the, even the argument on appeal, specific performance is not at issue that she did not want to sit and wait for years on a wait list. She had the opportunity to previously withdraw her guilty plea and chose not to. So she did what the third option was and the court agreed to the third option, which was renegotiation. We don't believe under Vatimutic that the objective evidence that she would have not renegotiated is shown and therefore there's no prejudice. Well, she ends up a convicted felon. Isn't that prejudice? Isn't that prejudice? There isn't a guarantee that she would have completed the sentence and gotten the sentence for a misdemeanor. And therefore I don't think that you can establish prejudice because that is, while that was an option that she would get a misdemeanor, it certainly wasn't guaranteed. Well, there was also a possibility of an trial, correct? There is that possibility, which is when you, when you move to withdraw a guilty plea, that is why you have to show that you have a valid defense or that going to trial would be a better circumstance. And that we don't have here. We don't have it in the motion to withdraw plea. We don't have it in the, in any, at any point that there is a valid defense or there was some other reason to withdraw the plea. We do have a statement by trial counsel that he provided ineffective assistance and that he had off the record conversations with his client where she said to him, we don't know the rest of the conversation, but she said she felt rushed to accept the modified sentence. And the trial court did, there was a couple of weeks in between when they first talked about withdrawing or the neutral discharge and when the modified sentence was. I agree that there is nothing on the record that says that she felt rushed. She was, she signed the order. She acknowledged, she understood the conditional discharge sentence and she even thanked the people for the modified offer. So I don't think that the record actually shows an objective evidence that she felt rushed. And yes, I agree that counsel did indicate that he provided some say, just providing inaccurate advice is not sufficient to, to withdraw a guilty plea. And in this case under short, I think it's very instructive. We have the same judge who knew the situation, knew the negotiations that that had gone on because he was the mental health court and there was no conflict of interest where the counsel included his ineffective assistance claim in the post trial motion. In this case, counsel did include the advice that he gave her that is alleged to be inaccurate and didn't provide any additional argument. In that case, the trial court was aware of counsel's conduct, which gave rise to the alleged ineffectiveness. It was unnecessary for counsel to argue in greater detail than what was included in the post trial motion. So here we have, this is the advice I gave. The court was well aware of the negotiations that everybody had entered into and the renegotiated sentence was aware that there was no guarantee that the defendant would have gotten the misdemeanor, was looking at Whitfield, which was we have three options. We chose option number three, specific performance was never something counsel or the defendant wanted to do. She was advised that she could move to withdraw her guilty plea, did not. And counsel renegotiated a sentence for her, albeit for a felony. There was no guarantee she wouldn't have, she would have gotten the reduction to the misdemeanor to begin with. So we do not believe that prejudice has been shown under those circumstances. This is a very fact specific case. It's a very unfortunate situation. And I think counsel, the court, the prosecution all did what they could when the situation of the unavailability of the residential treatment arose. All right, Ms. Wells, we have the affidavit of the attorney and we have the state generally agreeing with that, although they don't specifically say that, but I'm sure that that would have been the agreement. Does the judge ever tell Ms. Salome from the bench that these are your options or did all of that come just from her attorney? That is not ever discussed from the bench. No, Justice Hutchinson, the trial court did not provide her any admonishments regarding the three options in Whitfield. All right. And of course, those particular three options in Whitfield are not really incorporated into 402. So we can separate here. So what obligation does the court have to identify that to Ms. Salome on April 1st or sometime in that period? There is nothing in Whitfield, there is nothing in 402 that specifically requires the court to admonish Ms. Whitfield regarding those three options. What the people- Well, let me just ask, let me add something. There's no obligation of the court to say, I'm sorry about the circumstance, but he said that. So why didn't he go forward and explain the actual options? I think the court could have done so, they did not. And I don't have an explanation for why the court did not go further. But the record does show from the post-trial motion that she was aware of the three options because they did renegotiate. The affidavit shows that she was aware she could move to withdraw her guilty plea, did not want to and did not want to include specific or did not want to proceed with specific performance because of the long waiting list. And the question really is, was counsel ineffective when she was advised of those three options by counsel? So based on that, we believe that the court should affirm, that should not find counsel ineffective and that 402 admonishments do not apply under these unusual circumstances. Thank you. Do my colleagues have any other questions of Ms. Wells? I do not either. So thank you, Ms. Wells, for your argument. And we will return then to Ms. Pennick. Do you have any reply that you wish to offer? Yes, Your Honor. Counsel has said the record shows from the post-plea motion that Ms. Salome was aware of her options. That's exactly the problem with this case is like, well, first of all, it's the court's obligation to spell out on the record what her rights were in that moment. That didn't happen. Second of all, to the extent that somebody is going to be it shouldn't be the person who provided the information that was flawed that she allegedly relied on. So however you look at this case, there's all kinds of problems with due process isn't just about the terms of rule 402. 402 is meant to implement due process, but she already had that due process right short of that rule. And it's interesting to note that anything short of successful completion of mental health court does have due process standards attached to it. The Administrative Office of Illinois Courts, the AOIC, has this manual of standards for problem solving courts. This was referenced in both Hayes and in Defense Counsel's arguments below. And if we're talking about an unsuccessful discharge from one of their programs, standard 9.3 requires compliance with Illinois Supreme Court rule 402A, big letter A. And if we're talking about voluntary withdrawal from the program, which, you know, allegedly she had the option to do, standard 9.4 sets forth a procedure that looks a lot like rule 402. So the judge in that situation is required to ascertain in open court whether the withdrawal is knowingly and the participant as to the consequences that will result from withdrawal. So here you have a situation where her plea was modified such that she no longer has a chance to avoid a felony. She no longer has a chance for mental health treatment. And yet the state's argument is that no due process safeguards whatsoever were needed to accompany this, which is preposterous, frankly. I mean, even though there was compliance with rule 402 in the original plea that happened in October, that would be meaningless if you could just go in and change it after the fact, right? So without having those safeguards in place. So we would ask, I'm sorry, the question that I as opposed to a rule argument at this point in time, is that correct? Well, I mean, I think it's both because by the terms of 402, this situation doesn't quite fit, but I think you can't, it would be a meaningless rule if you could just go in and change it without it, you know, employing any protections. So it's both rule 402 and due process together. And again, this was a prejudicial error, you know, the court's failure to provide any admonishments, the failure to even ascertain on the record whether she was agreeing to this new deal. And counsel does refer to it as a new deal. And that's telling as well. You can't talk about what happened in April without really characterizing it as something akin to a plea agreement, which... Well, the state concedes here during argument that the spirit of the rule requires and should require that everything takes place at the same time, that you know what your sentence is, you know what the plea is, but the black letter rule does not require that. So we're going on, you know, it's a new ground, right? We are, but again, the fact that the law is clear that you can't move to reconsider a plea, you know, whether you characterize, I'm sorry, you can't move to reconsider a sentence in a negotiated plea situation, whether you characterize it as undoing the original plea and implementing a new plea with these specific terms, or whether you characterize it as a modification of the plea, I don't think it's a stretch to apply rule 402 procedures in this situation. But they won't really fit. We've already talked about that. So how do we fit it into 402? If 402 we're told is almost strict compliance, you have to say A, B, C, D, E. F is what our problem is here. We're reconsidering something that was not contemplated initially, and it is related to the sentence. Yeah, I think the way to fit it is perhaps, Justice Hutchinson, your suggestion about like, were they withdrawing the original plea at the time they imposed conditional discharge, you know, as far as reinstating the other charges. I think you wanted to make this clean, the best thing to do would be make a record of the fact that by agreement, she's being allowed to withdraw her original plea, and in its place, this new plea agreement is going to be in effect. And then in that moment, sure, readmonish her about everything that was on the table, that could have been on the table, what her options were, spell it all out. And then it would be valid. You know, I mean, if a plea modification doesn't fit Rule 402, then maybe it shouldn't have happened in the first place. And it would have been better to withdraw it and reinstitute a new plea under the more conventional procedures. But, you know, the bottom line is everything was done in a very sloppy fashion. And unfortunately, Miss Salome is the one who paid the price for that sloppiness. So we would ask that you allow her to withdraw her plea in this instance, or next best thing would be to remand it for new post plea proceedings with new counsel. All right. Do either of my colleagues have questions? No, thank you. And I do not either. So thank you, Miss Penick. Thank you. All right. At this time, we appreciate your arguments. We appreciate the participation of the defendant and Miss Aubrey to help her understand. And we will stand adjourned at this time, we will enter a decision in this case in due course. So all of those other than my colleagues who are present are now excused from this particular case. Thank you, your honors. Thank you. Thank you for Miss Solomon. Thank you. And thank you for me. Thank you, Miss Aubrey.